## Crescent Township *v.* Pittsburg and Lake Erie Railroad Company.

*Railroads—Eminent domain—Abandonment of roadbed—Road law—Res adjudicata.*

While the courts have no jurisdiction to lay out longitudinally a public road on the occupied right of way of a railroad company, nevertheless they have such jurisdiction to lay out such road on an abandoned right of way or roadbed. It cannot be said, that if a railroad has once made an appropriation of a strip of land for railroad purposes and afterwards abandoned it for such purposes, nevertheless, the land shall thereafter remain sacred and forever exempt from other public uses. After such abandonment it is open to appropriation to other public uses.

In a mandamus proceeding in the court of common pleas by a township against a railroad company to compel the defendant to reconstruct a highway which it had obstructed, it appeared that the bed of the highway in question had once been condemned by the defendant and used for a time as its roadway, but that after the construction of a double-track railroad the rails and ties had been taken away from the old roadbed. Subsequently by road proceedings in the quarter sessions the public road in question was laid out over the old bed. Some years afterwards the railroad obstructed the public road thus laid out, and refused to reconstruct the highway. Mandamus proceedings were then brought. It appeared from the record of the road proceedings in the quarter sessions that the petition for viewers prayed the court to appoint viewers to lay out a road in great part on the old abandoned road of the railroad company. The viewers reported that

they had laid out the road following "the old abandoned roadbed" of the railroad company. The viewers also reported that legal notice of the view had been given. *Held*, (1) that the record of the quarter sessions showed conclusively an adjudication of an abandonment of the old roadbed; (2) that as legal notice was given and no objection made by the railroad company at the time it could not attack the adjudication of the quarter sessions in a collateral proceeding; (3) that a judgment in favor of the township in the mandamus proceedings should be sustained.

THOMPSON, J., dissents.

Argued Oct. 27, 1904. Appeal, No. 146, Oct. T., 1904, by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1903, No. 296, on verdict for plaintiff in case of Crescent Township v. Pittsburg and Lake Erie Railroad Company and James M. Schoonmaker. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Petition for mandamus. Before BROWN, J.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*George E. Shaw*, of *Reed, Smith, Shaw & Beal*, for appellant. —The decree of the court of quarter sessions laying out a public road upon the right of way of the defendants' railroad was absolutely void and did not divest the title of the railroad company to its property ; and the company has not lost any of its rights by estoppel: Liberty Alley, 8 Pa. 381.

The general rule is that a sentence, judgment or decree by a court acting within its jurisdiction is res judicata, preventing the cause or action, fact or matter adjudicated from being re-litigated in any other court between the parties or privies. It is, however, equally well settled that if the court acted without authority in the premises, its decision is not merely voidable but void, and affords no protection to those claiming to act under it, and it cannot be set up as res judicata either in the same or in a different cause or action: Morgan's Appeal, 110 Pa. 271; Devlin v. Commonwealth, 101 Pa. 273; Fisher v. Longnecker, 8 Pa. 410; Black on Judgments, sec. 513.

The land of the defendant company appropriated for a highway by these proceedings was already devoted to a public use and could not be condemned for another public use: Pittsburg Junction R. R. Co.'s App., 122 Pa. 511; Scranton Gas & Water Co. v. Coal & Iron Co., 192 Pa. 80; Great Bend Road, 2 Pa. C. C. Rep. 335; Upper Darby Road, 2 Pa. C. C. Rep. 366.

The title of a railroad company to its right of way acquired by condemnation proceedings is a base fee, and cannot be divested either by nonuser or by adverse possession short of the time necessary to acquire title by prescription: Pittsburg, etc., Ry. Co. v. Peet, 152 Pa. 488; Railroad Co. v. Paper Mills, 149 Pa. 18.

*Henry A. Jones*, with him *James T. Buchanan*, for appellee.

The question of abandonment is res adjudicata: Road in Palmer Twp., 109 Pa. 274; Rauwolf v. Glass, 184 Pa. 237; Raisig v. Graf, 17 Pa. Superior Ct. 509; Herrick Twp. Road, 16 Pa. Superior Ct. 579; Sterrett Twp. Road, 114 Pa. 627; South Abington Twp. Road, 109 Pa. 118; Kreiter v. Harrisburg City, 2 Pear. 326; Millcreek Twp. v. Reed, 29 Pa. 195; Hamner v. Griffith, 1 Grant, 193; Leet Twp. Road, 159 Pa. 72; Vacation of Derry Twp. Road, 11 Pa. Superior Ct. 232; Bellevernon Road, 15 W. N. C. 232; Kingston Twp. Road, 134 Pa. 409; Fretz's App., 15 Pa. 397; Bachman's Road, 1 Watts, 400; Wagner v. Salzburg Twp., 132 Pa. 636; Fowler v. Jenkins, 28 Pa. 176; Smith v. Lebanon, 8 Pa. Superior Ct. 481; Road in North Franklin Township, 8 Pa. Superior Ct. 358; Mathewson v. Clinton Twp. Supervisors, 8 Pa. C. C. Rep. 204; Adle v. Sherwood, 3 Whart. 481.

Likewise a public road may be laid out partly over the bed of another public road: West Chester Road, 2 Rawle, 421.

OPINION BY MR. JUSTICE DEAN, December 31, 1904:

In 1878 the defendant company located and constructed its railroad through Crescent township Allegheny county as part of its line between Pittsburg, Pennsylvania and Youngstown, Ohio. It was a single-track road and entered the village of Shousetown in that township over a bridge crossing Flaherty's Run and passed on over a fifty-foot street in the village called

High street, then on to the western line of the village where it entered upon the property of Virginia Graham, thence through the Graham land to and over a bridge constructed by the company over Strabane run to the Beaver county line. The company, by condemnation for railroad purposes, acquired through the Graham property a strip of land 600 feet long and sixty feet wide on which it constructed, and afterwards operated up to 1891, its single-track railroad and also a passing siding which extended beyond the Graham land but in width not beyond the sixty feet. A gully which crossed the Graham land diagonally, before the construction of the railroad, carried the surface water into the Ohio river. A small culvert, about ten feet below the railroad, to take care of this water, was constructed by the railroad company. To straighten track and reduce grade the railroad company bought from Virginia Graham in 1889 an additional strip alongside its original location, seventy-five feet wide at one end and 110 feet at the other. On this strip the company made a cut twenty feet deep sufficiently wide at the bottom for the construction of a double-track railroad. The upper slope of this cut extended slightly into the right of way, but not so far as to interfere with the operation of the old track if the company had desired to operate that track. In 1891 the company commenced to operate its new double-track line ; it took up its rails on the old track and ties, took away the bridge over Strabane run and ceased to use the roadbed for railroad purposes. Travelers and vehicles used it thereafter as a road ; at the Graham land a fence was erected across it with turnstiles, so that those on foot alone could pass over that part. In 1896, at December quarter sessions, citizens of the township petitioned the court to appoint viewers to view and lay out a public road on the old abandoned roadbed of the railroad. The viewers were appointed, and after having viewed the route of the proposed road reported to the court, that they had laid out a public road as prayed for by the petitioners on the old abandoned roadbed of the Pittsburg and Lake Erie Railroad Company at a width of forty feet, that the road was necessary for public use ; that they endeavored to procure releases for damages from all owners of land through which the road passed but had failed to procure such releases ; that they had assessed damages to one Anderson at $100 and to Virginia

Graham at fifty; that no other property owners sustained damages. The court confirmed absolutely the report of the viewers and ordered the township supervisors to open the road. They did open it in 1897, and from that time to 1903 the township maintained and kept it in repair and the public used it. In that year, however, the railroad company attempted to resume possession of a part of it by building a signal bridge over and upon it and by making a new slope for its cut across the traveled portion so obstructing it as to make it impassible. The township authorities, while not denying the power of the railroad company to repossess itself of the land appropriated for the highway under the act of 1849 which provides that: "if any . . . . railroad company shall find it necessary to change the site of any portion of any turnpike or public road they shall cause the same to be reconstructed forthwith, at their own proper expense, on the most favorable location, and in as perfect a manner as the original road," nevertheless contended that the railroad company must under this statute restore the highway outside the old roadbed. The railroad company refused, denying the jurisdiction of the quarter sessions to appropriate for a highway the land which by right of eminent domain in 1878 it had appropriated for railroad purposes. The township authorities then petitioned the court for a writ of mandamus to compel the railroad company to reconstruct the highway; mandamus was granted, to which the railroad company made return, that the land claimed as a highway had been lawfully acquired by the railroad company for railroad purposes and had never been abandoned; and further, it denied the jurisdiction of the court of quarter sessions to appropriate for a public highway any portion of its roadbed even if not occupied at the time by rails and trains. As this return raised an issue of fact as well as of law, the court directed the issue of fact for trial before a jury.

The evidence on the question of abandonment was heard, and while the court was of opinion there was not sufficient evidence to show abandonment, yet on the law it was of opinion, that the decree of confirmation absolute in the court of quarter sessions on the report of the road viewers, was conclusive on all parties and res adjudicata, therefore could not be disturbed in a collateral proceeding to test the respective rights

of the parties. Therefore, the only question at issue before us on this appeal, for the plaintiff has not appealed from the decision on the question of fact, is the conclusiveness of the decree in the quarter sessions. It certainly is conclusive on all parties as to the subject of adjudication. How far could that court go under the act of 1836 in laying out public roads on land already appropriated by a railroad under the right of eminent domain for its roadbed? We speak not now of its right for other purposes not included in its right of way for its trains, for this last is not involved in this issue ; but under the act of 1836 it was always held that the court of quarter sessions had authority to lay out a public road which crossed at grade a railroad diagonally. It never was held under that act, that a public road could occupy a railroad bed or any part of it longitudinally. Under the act of 1901, which as concerns railroad crossings is a substitute for the act of 1836, and under it all crossings at grade are forbidden, except in certain exceptional instances, and jurisdiction over such crossings is conferred on the courts of common pleas.

Taking the record before us as it stands, the highway was laid out longitudinally on the roadbed already appropriated by the railroad company, for by the judgment in the mandamus proceeding unappealed from, that fact is decided in favor of the railroad company; but does that judgment show that another court had no jurisdiction over the same subject? The court of common pleas is not a court of appeals from decrees of the quarter sessions. The decrees and judgments in the one court are final and as binding as those of the other, in subjects over which it has jurisdiction. The quarter sessions had no jurisdiction to lay out a public road longitudinally on the occupied roadbed of a railroad company and its decree to that effect would have been coram non judice, a nullity, because of want of jurisdiction in the court to make it. But how shall that lack of jurisdiction appear? Not by the judgment of another court of no higher jurisdiction, in a collateral matter, but from the proceedings which are the foundation of the decree. While that court had no jurisdiction to lay out longitudinally a public road on the occupied right of way of a railroad company, nevertheless, it had jurisdiction to lay out such road on an abandoned right of way or roadbed. It cannot be said, that if

a railroad has once made an appropriation of a strip of land for railroad purposes and has afterwards abandoned it for such purposes, nevertheless, the land shall thereafter remain sacred and forever exempt from other public uses. Clearly, after such abandonment it is open to appropriation to other public uses.

What does the record show in the proceedings in the quarter sessions necessary to give jurisdiction? The petition for viewers prays the court to appoint viewers to lay out a road in great part on the old abandoned road of the railroad company; then the viewers report that they have laid out the road prayed for by the petitioners and they recommend that " the width for that portion of the road which follows the old abandoned road-bed of the Pittsburg and Lake Erie Railroad Company be fixed at forty feet." There was no concealment of their purpose to occupy longitudinally the old abandoned bed of the railroad company; viewers spread upon the records in their report that they had so laid out the road forty feet wide. The court of quarter sessions was bound to assume, from the sworn uncontroverted facts upon its own records, that the old railroad bed had been abandoned. It could determine the fact in no other way. It was not bound to send to the railroad company's officers and inquire of them whether the sworn petitioners and viewers were truthful. When the report was filed, under the rules of the court everyone interested had opportunity to appear and except to it; no one objected and the report was confirmed absolutely. This made it res adjudicata, a matter judicially decided, unless there was some irregularity in the proceedings which was fatal to jurisdiction over the person of one interested.

The railroad company, an artificial person, claims that it had no notice of the proceedings, therefore the court had no jurisdiction to appropriate its land, for it had no opportunity to be heard. It affirmatively appears from the report of the viewers that legal notice was given. The second section of the Act of February 24, 1845, P. L. 52, applicable to Allegheny county, makes it the duty of the viewers to give five days' public notice before their meeting. This "legal" notice which the viewers gave was doubtless the notice enjoined by the act; there is no other presumption; it is ruled this is sufficient notice. See Road in Sterrett Township, 114 Pa. 627 and Millcreek Township

v. Reed, 29 Pa. 195. In some states they have gone farther and held that the laying out of a public road is a proceeding in rem and binds all the world; we have not gone farther than to hold that it must affirmatively appear from the report of viewers that legal notice was given, which does appear in this report. In fact, it goes further, and states that the viewers tried to obtain releases of damages from all owners of property over which the road passed.

What we have said passes on all of appellants' assignments of error, they are all overruled and the judgment is affirmed.

THOMPSON, J., dissents.