# BOARD OF EDUCATION OF CITY OF CLINTON v. HOUILSTON *et al.*

No. 5104.   Opinion Filed September 21, 1915.

(151 Pac. 1035.)

1.  **SCHOOLS AND SCHOOL DISTRICTS—Action—Pleadings—Affirmative Defense.** It is alleged in the petition that "the said defendant did, by its president, order in writing from plaintiffs certain material as shown by attached itemized statement." **Held,** the allegation is sufficiently definite that the material was ordered by the board. If it be true that the order was given without the sanction or approval of the board, then that fact would be available as a defense and should be pleaded as such by the defendant.

2.  **APPEAL AND ERROR—Findings of Fact—Evidence.** The findings of the trial court will not be disturbed on appeal where the evidence reasonably tends to support such findings.

(Syllabus by Mathews, C.)

*Error from District Court, Custer County;*
*James R. Tolbert, Judge.*

Action by A. L. Houilston and another, partners doing business as the Houilston Coal & Material Company, against the Board of Education of the City of Clinton. Judgment for plaintiffs, and defendant brings error. Affirmed.

*Henry Bulow,* for plaintiff in error.

*Wilson & Tomerlin* and *A. E. Darnell,* for defendants in error.

Opinion by MATHEWS, C. It appears from the records in this case that on the 27th day of July, 1908, the officers of school district No. 90, which district is now embraced in the city of Clinton, Custer county, Okla., entered into a contract with J. V. Gilliland, a contractor,

for the erection of a school building in said district. The said contractor agreed to furnish all the material and perform the work in the erection of said school building for $12,935, to be paid by said school district. On the 19th day of September, 1908, the board decided to use what is known as "face brick" for the outside walls, instead of common brick, as called for in the contract, and entered into a supplemental contract with the contractor to that effect and agreed to allow him $10.70 per thousand as the difference in the price of the two kinds of brick. On the last-named date, the following order for the brick desired was delivered to plaintiffs:

"ORDER NO. .............    DATE, Oct. 19, 1908.

"Ship to J. V. Gilliland at Clinton. Terms: Reg 2 weeks.
70 M Dark Red Glazed Face Bk........................................ 18.00
No. 1 Cham as sample submitted.

"J. N. THRASH, *Dist.*"

The brick were shipped and used in the construction of the said school building. Plaintiffs were not paid for the same, and this suit was instituted.

Plaintiffs contend that they sold the brick to the school district direct, acting through its directors. Defendant contends that it ordered no brick from plaintiffs, and denies that J. N. Thrash ordered any brick for it, and denies his authority to do so, and denies that what is styled as an "order" for brick by plaintiffs as above set out is an order at all, and denies its liability for the brick, contending that, according to the contract, J. V. Gilliland, the contractor, for a specific sum was to and did furnish all of the material for the erection of the school building, and alleges that plaintiffs knew that by the terms of the contract the said contractor was to fur-

nish all the necessary material to be used therein, and alleges further that the said brick were ordered by the said contractor and shipped to him on his credit. The parties hereto will be referred to as they were designated in the court below.

1. The defendant first urges that the court erred in not sustaining the demurrer to the petition. The particular allegation complained of in the petition is as follows:

"That on the 19th day of October, 1908, the said defendant * * * did by its president, J. N. Thrash, order in writing from said plaintiffs certain building material as shown by attached itemized statements."

The defendant urges that there is no allegation as to the authority of Mr. Thrash to order the material, that it does not appear that he has been authorized in any way to purchase the same, and that his authority cannot be presumed from the allegation that the board "did by its president" make the order.

The allegations of the petition are sufficiently definite, and the action of the court in overruling the demurrer was proper. If it had been true that the said J. N. Thrash had no authority to give such an order, or if he had given the order on his own accord without the sanction or approval of the other directors, then that fact would have been available to defendant as a defense and should have been pleaded by it as such. *Buffalo School Furniture Co. v. School District,* 7 Kan. App. 796, 54 Pac. 115. It is true that the said Thrash had no authority as president of the board of directors to give the order unless authorized by the board to do so, but such lack of authority must be pleaded by the defendant as a defense.

2. The cause was by agreement tried to the court, who found for the plaintiffs, and the defendant says that

his decision is not sustained by the evidence. It has become the accepted doctrine of this court that the findings of the trial court will not be disturbed on appeal where the evidence reasonably tends to support such findings. The evidence in this case was sharply conflicting as to whether the defendant board or the contractor, J. V. Gilliland, purchased the brick, the subject of this controversy, from the plaintiffs.

H. F. Shiff, a member of the plaintiff firm, testified that he went to Clinton and showed the defendant board a display of brick he had for sale, and that they decided on a certain brick and agreed on the price therefor, and that the president of the board, J. N. Thrash, signed the order therefor, the other two directors being present and agreeing thereto, that the sale was made direct to the board and not to the contractor, that the original amount of the bill was $1,145.81, and that $344.70 had been paid by the board.

Witness Shiff was corroborated, in the main, by the contractor, J. V. Gilliland. There was also introduced in evidence two letters from Chas. W. Goodwin, treasurer of said school board, as follows:

"CLINTON, OKLA., 10/11, 1909.

"Houilston Coal & Material Co., Oklahoma City—Gents: Yours of 9th received, relative to Gilliland brick account, and you now claim $868.27, and on 6—15—09 your claim was $801.07. What makes the difference? We are trying to make settlement now.

"Respectfully,

"CHAS. W. GOODWIN."

"CLINTON, OKLA., Jan'y 18, 1909.

"Houilston Coal & Material Co., Oklahoma City—Gents: I have gone over your account with Mr. Gilliland and I find that we owe you some more money, but I want

to stand you off for a few days, as we are trying to use our money so as to keep everything going until the tax comes in or a part of it. We will have plenty of money soon to take care of all.

·"Respectfully,

"CHAS. W. GOODWIN, *Treas.*"

In rebuttal of the testimony offered by plaintiff, two of the school directors testified: That the board entered into a contract with one J. V. Gilliland to furnish all of the material and erect a school building for a stated sum. That they afterwards decided to make a change in the brick to be used for the outside of the building, and agreed with the contractor to pay him $10.70 per thousand as the increase in the price of the brick they had decided to use for the outside of the building. That at no time did they buy any brick from plaintiff. That they made the selection of the face brick, and that witness Shiff made what he called a "memoranda" of the price and kind of brick and asked Mr. Thrash to sign it, and that Mr. Thrash said: "I don't see any use in that. We are not interested. Mr. Gilliland is the man you want to talk to." To which witness Shiff replied, "But we haven't got anything to show what you people would be satisfied with." That J. N. Thrash asked, before he signed the "order," if the board would be bound by it, and was informed by witness Shiff that it would not be bound, and that he signed it in the presence of the other two members of the board with that understanding. The evidence is conflicting as to whether or not the contractor, J. V. Gilliland, was present at this time.

Witness Shiff testified that he knew nothing of the terms of the contracts between the board and the contractor.

It appears from the evidence that the contractor failed to complete the building according to the terms of the contract, and in a settlement with him it developed that the board had paid him practically all that was due him, and it afterwards was learned that plaintiffs had not been paid for the brick furnished and used in the building, which had been shipped to the contractor, but charged upon the books of plaintiff to "C. W. Goodwin, Secretary and Treasurer, Board of Education, Clinton, Oklahoma."

The court found that the sale was made to the board of directors, and that they were liable upon the account, and we think the evidence reasonably tends to support the finding. The evidence shows undoubtedly that, at all times when the plaintiffs were negotiating for the sale of the brick, all three of the school directors were present and participated in the negotiations for the purchase of the brick; hence they were acting in their legal capacity as a board in a regular session and within their official authority, and their acts were binding upon defendant.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.