## CANADIAN RIVER R. CO. v. WICHITA FALLS & N. W. R. CO. et al.

No. 4941—Opinion Filed June 12, 1917.

(166 Pac. 163.)

(Syllabus by the Court.)

**1. Railroads—Abandonment of Right of Way—Question for Jury.**

To constitute abandonment of an easement of right of way, there must be not only an actual relinquishment, but an intention to abandon; and this is a question of fact for the jury, or the court sitting as a trier of the facts, under all the evidence.

**2. Same—Evidence of A'andonment.**

The evidence of the railway officials that they did not intend to abandon the right of way is not conclusive upon the question of abandonment, but may be considered in connection with the other facts and circumstances.

**3. Appeal and Error—Review—Question of Fact.**

Where the evidence reasonably supports the finding of the trial court on a question of fact, the judgment will not be disturbed on appeal.

**4. Eminent Domain—Abandonment of Right of Way—Reverter.**

Where a railway company has obtained, through condemnation proceedings, an easement over certain lands, and afterwards abandons such easement, the title thereto reverts to the original grantor, and is subject to condemnation for the same purpose by another railway company.

Error from District Court, Woodward County; James W. Steen, Judge.

Condemnation proceeding by the Wichita Falls & Northwestern Railway Company against the Canadian River Railroad Company, Charles N. Canfield, and others. From a judgment enjoining it from commencing any suit to disturb the plaintiff's title or possession, defendant the Canadian River Railroad Company brings error. Affirmed.

Keaton, Wells & Johnston, Charles R. Alexander, and Kellogg & Rose, for plaintiff in error.

Charles Swindall, C. W. Herod, and Charles C. Huff, for defendants in error.

TURNER, J. On August 1, 1911, defendant in error, the Wichita Falls & Northwestern Railroad Company, as plaintiff below, filed its petition in the district court of Woodward county to condemn a right of way over and across the S. W. ¼ of section 6, township 22 north, range 20 west, owned by Chas. N. Canfield, and also joined as defendants the Canadian River Railroad Company and the United States Mortgage & Trust Company, alleging that they claimed some interest in the premises. Plaintiff further alleged that on or about February 5, 1907, the Canadian River Railroad Company filed its action in the district court of said county against Canfield for condemnation of a right of way over the land involved; that commissioners were thereafter appointed and assessed the damages for said right of way at $305, which was paid by said Canadian River Railroad Company and accepted by Canfield in full settlement of said right of way; that said Canadian River Railroad Company erected a certain grade across said land and upon the land now proposed to be condemned by plaintiff for its right of way; that said Canadian River Railroad Company did not construct its line of railway as agreed, after having graded some three miles of its right of way on its proposed road from Woodward to Oklahoma City, and wholly abandoned the construction of said road, and all rights it had in the premises sought to be condemned; that said Canadian River Railroad Company has not complied with the provisions of the Constitution and laws of this state so as to entitle them to do business in this state; that it was necessary for plaintiff to construct its right of way across said premises. Plaintiff then asked that three disinterested freeholders in said county be selected to inspect the property involved and assess the damages, if any, that would come to said land by reason of the right of way; that upon such assessment being made and damages paid therefor, the land be condemned for its right of way; and that any rights the Canadian River Railroad Company and the U. S. Mortgage & Trust Co. may have in the premises be an-

nulled, canceled, and held inferior to the rights of plaintiff.

The court appointed commissioners, and the damages were assessed; to which exceptions and demand for jury trial were filed by Canfield and said Canadian River Railroad Company. The Canadian River Railroad Company filed its answer; and, after general denial, admitted that it had, on February 5, 1907, condemned a right of way over the land involved and sought to be used by plaintiff; that the proceedings for such condemnation were regular; that commissioners were appointed to assess the damages; that the damages so assessed were paid and the report of the commissioners duly confirmed. Said defendant denied that it had abandoned its right of way, but alleged that it was the owner of the right of way sought to be condemned by plaintiff; that the land sought to be condemned had already been taken for public use; and that same is not now subject to condemnation by plaintiff. Defendant admitted that it had temporarily ceased work on its right of way, after grading a portion thereof, but alleged that it was the intention of the directors of said company to complete its line of railway; denied that it was necessary for plaintiff to appropriate said tract of land for its right of way, and alleged that plaintiff's object was to use the grade this defendant had constructed at a cost of some $2,500, without paying therefor; and denied that plaintiff had made application to defendant for a right of way across said premises. Defendant further alleged that the United States Mortgage & Trust Company holds certain interest in said property in the nature of a mortgage; alleged that the commissioners appointed in the instant case wholly failed to consider its rights in the way of the assessment of damages it has sustained, etc. Upon the issues thus joined, the cause was tried to the court; the demand for jury trial being withdrawn. The court found that, on or about July 14, 1907, the Canadian River Railroad Company, by an action then pending in the district court of Woodward county, condemned a strip of land over and across the lands of said Canfield, being the same land sought to be condemned herein for plaintiff's right of way. The court further found:

"That the said defendant the Canadian River Railroad Company obtained, by virtue of said condemnation proceedings, an easement only over and across the lands of said defendant Charles N. Canfield, and upon the line aforesaid, for the construction, maintenance, and operation of a railroad. The court further finds that the right of way described * * * upon which a grade was constructed over the lands of the said defendant Canfield by the said defendant the Canadian River Railroad Company, under and by virtue of said. condemnation proceedings, has been by the said defendant the Canadian River Railroad Company, abandoned, and that it no longer has any right, title, or claim therein, and that the lands described in said condemnation proceedings, granting said right of way to the said defendant railroad company, under the evidence in said cause, conveyed an easement in said lands only to the said defendant railroad company. .

"And the court further finds that the said lands are not now, nor never have been, used and occupied by the said defendant the Canadian River Railroad Company as a railroad or for railroad purposes; that the same is not necessary for the use thereof, and that all rights accruing to the said defendant railroad company by virtue of said condemnation proceedings have been forfeited by reason of the nonuser and abandonment thereof.

"The court further finds that the said plaintiff. the Wichita Falls and Northwestern Railway Company, by its counsel, and the said defendant Charles N. Canfield by his counsel in open court stipulate and agree that the demand for a jury and the exceptions filed by the defendant Canfield to the report of the commissioners appointed in said cause be, and they are hereby, withdrawn; and it is further stipulated between the parties aforesaid that as between the parties aforesaid the report of the commissioners and the proceedings in condemnation in said cause be approved and confirmed; and that the said defendant Canfield be awarded the condemnation money awarded by said commissioners; and that the defendant Canfield have judgment therefor, together with his costs.

"The court further finds that the exceptions filed in the above-entitled cause by the said defendant railroad company are not well taken; and it is by the court ordered that the said exceptions and each of them are overruled and denied, to which order the said defendant railroad company duly excepts.

"It is by the court further ordered and adjudged that the demand for a trial by jury and the exceptions of the said Canfield are, by the court, permitted to be withdrawn. And it is further ordered, adjudged, and decreed by the court that the title and possession of said plaintiff in the premises be and the same is hereby forever settled and quieted in the plaintiff as against all claims or demands of said defendants Charles N. Canfield. the Canadian River Railroad Company, or either of them, or those claiming or to claim under them, or any of them, by reason of said condemnation proceedings, be, and the same are hereby canceled and removed as clouds on the title of said plaintiff, the Wichita Falls & Northwestern Railway Company. and that the said proceedings in condemnation be, and the same are hereby.

confirmed and approved; and the said defendant Canfield is hereby adjudged and awarded to be entitled to the condemnation money paid into court in said proceedings.

"And it is further ordered, decreed, and adjudged that said defendants the Canadian River Railroad Company, the United States Mortgage & Trust Company, trustee, and Charles N. Canfield, and those claiming through, by, or under them be, and they are hereby, perpetually enjoined and forbidden to claim any right, title, interest, or estate in or to said premises by virtue of said deed, hostile or adverse to the possession and title of plaintiff herein."

And the court perpetually forbade and enjoined said defendants or either of them from commencing any suit to disturb the possession or title of said plaintiff, and decreed that plaintiff recover its costs herein. From said judgment the Canadian River Railroad Company prosecutes this appeal.

For reversal it is urged that the court erred: (1) In holding, in effect, that the land already appropriated by the Canadian River Railroad Company for its right of way could again be condemned by plaintiff for the same or a different public use; (2) in holding that the evidence was sufficient to show an abandonment by said Canadian River Railroad Company of its right of way over said premises; (3) in assessing the damages and confirming the award in favor of Canfield, without payment to this defendant, Canadian River Railroad Company, of any sum whatever for the grading done on said premises and which were appropriated by said plaintiff.

These assignments all turn upon the question of whether or not the evidence was sufficient to show an abandonment of the right of way acquired by the Canadian River Railroad Company in July, 1907, over the premises involved.

On the trial of this cause, it was agreed by all parties hereto that the evidence introduced in the trial of the case of Sidney B. Laune et al. v. Santa Fe, Liberal & Englewood Railroad Company, as pertained to the abandonment of said right of way of the defendant Canadian River Railroad Company, be introduced in this case with the same force and effect as if taken herein.

With reference to abandonment of its right of way, secured in 1907 by the Canadian River Railroad Company, S. B. Laune testified on behalf of plaintiff, substantially: That he was the owner of a tract of land in said county through which the Santa Fe & Liberal Railroad Company secured a right of way; that he was induced to convey said right of way upon the representations of the

agents of said proposed road in the fall of 1906 that they would build a line of railway from a place in New Mexico to Woodward, Okla., within two years from September 29, 1906. That he was present at a meeting of the citizens of Woodward when one Ensign, an officer of said companies, addressed the meeting; that said officer stated that for legal and local reasons the Santa Fe & Liberal Railroad Company was given a different name from that of the Canadian River Railroad Company, but that both roads would be merged into one management. That if the people of Woodward would meet their demands and raise a bonus of $15,000, they would build these railways and put them in operation within two years. That the proposition to the people of Woodward was for them to raise a bonus of $15,000 and secure a right of way for two miles on either side of said town with a right of way through Woodward. That this proposition was accepted. That $7,500 was to be paid each of said railroad companies. That he was a member of the "right of way and bonus" committee. That subscriptions were started and under the direction of the officers of said companies, notes were prepared for execution. That he executed a note for $400, containing the following:

"Provided that said railroad company build a standard-gauge railroad from the east boundary line of Beaver county, Oklahoma, in a southeasterly direction to the city of Woodward, Oklahoma, and complete the same and have trains operated over and across said line on or before the 28th of September, 1908."

That several other citizens of said town executed notes containing similar provisions of forfeiture. That they were deposited with a committee. That the note he signed was returned to him two years after its execution. That $13,000 of the bonus was subscribed. That he paid the taxes on said right of way conveyed to the Canadian River Railroad Company for every year except one, since he conveyed it to them; that since the spring of 1907, no work whatever had been done on said right of way by either of said companies.

D. P. Marum, on behalf of plaintiff, testified that he was a resident of Woodward; that in the fall of 1906 he was present at a meeting of the citizens of Woodward, called for the purpose of considering a proposition submitted by the promoters of the Santa Fe & Liberal Railroad Company; that he had a copy of the original proposition submitted at said meeting, which provided that the companies would begin work on said railway within 60 days and would prosecute the

work thereon, without unnecessary delay, until completion; that one Key, who was a director of plaintiff in error, was present at said meeting; but he stated that the railway would be completed within two years from said date; that certain railway shops, storage houses, and a hospital would be built by said road in Woodward; that the citizens raised money and purchased rights of way for two miles north and two miles south of Woodward, the deeds reciting that the land would revert to its owners if the road was not built within a specified time; that the agents and promoters of said railroad companies represented to the citizens of Woodward that their railroad would be completed and in operation within two years from that time; that both the Santa Fe & Liberal and the Canadian River Companies were in fact one and the same company; that no application was made to the citizens of Woodward for an extension of time within which to construct said railway; that some grading had been done by said companies in the early part of 1907, since which time no work had been done on either of its lines by said companies.

W. S. Compton, on behalf of plaintiff, testified that he was city clerk of Woodward, and had custody of the ordinances passed by said city; that on September 4, 1906, the city by ordinance granted a right of way through said town to the Santa Fe & Liberal Railroad Company, said ordinance providing that construction on said line of railway must begin within 60 days after the passage of said ordinance and the road must be constructed within a period of 24 months for a distance of 100 miles, and that:

"Upon failure of said railroad company to comply with the provisions of the rights and privileges granted by this section (6) all the rights and privileges granted by this ordinance are to become forfeited, and all rights are to immediately be, and become reinvested in the said town of Woodward as fully and completely as though this ordinance had not been passed. * * *"

Said witness further testified that an ordinance had been passed repealing the above ordinance. The evidence further shows that most of the deeds obtained for rights of way contained provisions of forfeiture similar to this:

"This conveyance is made upon the condition that said grantee, its successors and assigns, shall, within 30 months from the date hereof, complete its said line of railroad, and have the same in operation; otherwise the lands hereby conveyed revert to and vest in the said grantors."

It is further shown that the bonus notes executed have been returned unpaid to the

parties executing the same, and that the companies have forfeited their rights therein.

The evidence of defendant is substantially as follows: H. W. Kruse testified that he was general manager of the Santa Fe Company and of several other companies organized in New Mexico, all being promoted by the same company; that a large amount of bonds were sold by said Santa Fe Company and the Canadian River Company, which companies were promoted by E. D. Shepherd & Co., of New York, which owned the stock of said companies; that they attempted to sell these bonds and stocks to the investing public for the purpose of building these railroads; that the books showed that $170,000 had been spent by these companies, most of which was spent in New Mexico in the development of ice industry and coal mines; that about 1½ miles of railroad had been constructed by the Santa Fe Company in this state; that said companies had no mileage in operation and no equipment in this state; that neither of said companies had done anything toward building said railroads since the spring of 1907; that Shepherd & Co. were bond brokers; that their plan was to organize these companies, and whether or not they would build these railroads depended on their ability to sell the bonds issued thereby; that the Santa Fe Company issued $8,000,000 of bonds and the same amount of stock; that as general manager of the Santa Fe Company he had never filed a copy of the charter with the state authorities, or an instrument designating a resident agent in the state; that most of the companies for which he was manager dealt in bonds and stocks and not in cash; that as general manager of the Santa Fe Company he could not state when they would be able to build the road, and that their ability to build depended on their ability to build the securities; that Shepherd & Co. did not have the money to build said roads until the disposition and sale of these bonds; that it was the scheme of the Santa Fe Company to construct a railway from Raton, N. M., to Woodward, Okla., and the scheme of the Canadian River Company to construct a line of railway from Woodward to Oklahoma City.

L. L. Kellogg testified by deposition that he was a member of the firm of Kellogg & Rose, of New York City, and treasurer and director of both the Santa Fe Company and the Canadian River Company; that the capital stock of the Santa Fe Company was $8,000,000, and that the company had authorized and issued the same amount in bonds; that the authorized stock of the Canadian River Company was $5,500,000, and bonds to that amount were issued; that E. D. Shep-

herd & Co. had a contract with these railway companies to sell their bonds and stocks and build these two roads; that E. D. Shepherd & Co. had been adjudged bankrupt in June, 1909; that these stocks and bonds, except $780,000 which had been sold to the public, were sold at public auction for $85,-000; that these railways could not be built until after a complete reorganization of said companies was effected under one management; that he was a member of the reorganization committee; that the officers of said companies were appointed by Shepherd & Co., but they were not then connected with it in its reorganization; that he did not know whether the Canadian River Company or the Santa Fe Company was solvent or not; that nothing had been done since 1907 in the way of constructing said railways in Oklahoma; that the New Mexico-Colorado Coal Mining Company acquired the stocks and bonds of the Santa Fe Company which had been sold to investors, but no cash was paid therefor; that said railways could not be built until certain development had been made in the coal fields in New Mexico belonging to said companies and moneys acquired with which to build these roads; that said companies intended to build these roads after acquiring funds from the development of their property in New Mexico, but no definite time could be fixed when they would be constructed, owing to their financial inability to construct the same; that the Santa Fe Company had expended about $11,-000 on various properties in Woodward county; and that the Canadian River Company had expended in grading and acquiring its right of way about $9,000.

In rebuttal, plaintiff introduced evidence to show that the grade made by the Canadian River Company and appropriated by plaintiff was practically of no benefit to plaintiff in making its grade, and further tending to show that it was necessary to use that grade for the construction of its road, and that it had constructed about 400 miles of railroad in this state. It is further shown that the deeds granting the right of way to the Canadian River Company contained provisions similar to the following:

"The above conveyance is made upon the condition that the above-named grantee, its successors or assigns, shall construct and put in operation within thirty months from the date of these presents its said line of railroad; otherwise that the title to lands above conveyed shall revert and vest in said grantor, together with all the improvements thereon, and the appurtenances thereunto belonging, and warrant the title to the same."

From all of which it appears that from April, 1907, up to the date of this trial, October 4, 1912, no physical act, showing an intention to use this right of way, was ever done by plaintiff in error; that plaintiff in error had not even secured a continuous right of way for its line, as shown from a map thereof admitted in evidence, but that it had secured a right of way over only a few parcels of land; that the other portions of said right of way were conveyed by deeds, under which the title thereto reverted to the original owner, if the railroad was not constructed within from 24 to 30 months from the dates thereof; that other portions of its right of way had never been secured in any way; that the ordinance procured from the town of Woodward expressly provided that the railroad was to be constructed for a distance of 100 miles within 24 months from September 29, 1906, or forfeit the right of way conveyed through said town, which was not done. It further shows that plaintiff in error has rendered no property for taxation in this state, nor paid any taxes in said county; that it has no means with which to construct its road; that it has no tools or equipment with which to construct the same, and has done nothing towards its construction since April, 1907; that it has shown no evidence of being the owner of any property in this state until plaintiff brought this action to condemn its rights of way over the same land condemned by the Canadian River Company; that the right of way deeds and the bonus rates obtained were obtained through fraud and misrepresentations; that the issue of bonds of plaintiff in error in the sum of $5,500,000 had been sold by the trustee in bankruptcy of Shepherd & Co. It further appears that plaintiff in error was insolvent and had no means with which to construct its road; that it was uncertain when it would secure means with which to promote the undertaking, if it ever could secure the same; that it had no definite intention to use the land for the purposes for which it was condemned at any fixed time in the future, or upon the happening of any well-defined contingency.

By article 2, sec. 24, Const., it is provided that:

"The fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it is taken."

Thus it will be seen that the plaintiff in error acquired only an easement in the land

condemned; and the court did not err in holding that the easement acquired had been abandoned. The evidence as above set out shows conclusively that plaintiff in error had no definite intention, from the time it abandoned the work in the spring of 1907, up to the time of the trial, of completing the proposed line of railway. The witnesses in this case were not the original incorporators; they testified that the only way they could build the proposed line was to obtain outside capital and develop certain coal properties in New Mexico, and with the proceeds thereof it was intended to build the road.

In C. & E. I. R. R. Co. v. Clapp, 201 Ill. 418, 66 N. E. 223, the court, speaking to what constitutes abandonment of a right of way once acquired, and that abandonment was a question of fact to be submitted to the jury, said:

"To constitute an abandonment there must be not only an actual relinquishment of the property, but an intention to abandon it. The intention of the party, whose rights are alleged to be abandoned, is the important fact to be ascertained in determining whether or not there has actually been an abandonment of the property. This question of fact is one for the determination of the jury, depending upon all the facts and circumstances disclosed by the evidence. Keane v. Cannovan, 21 Cal. 293; s. c., 82 Am. Dec. 744; Wyman v. Hurlburt, 12 Ohio, 81; s. c., 40 Am. Dec. 464, and notes; McGoon v. Ankeny, 11 Ill. 358. In Keane v. Connovan, supra, it was said by Mr. Chief Justice Field: 'The charge to the jury on the subject of abandonment was correct. The charge was that the question of abandonment was one of intention, of which the jury was to judge exclusively, and that, in order to do so, they must take into consideration all the facts and circumstances before them. The question was correctly stated; it was plainly one of intention to be gathered from the facts.'"

In that case the railway company, in 1893, had constructed a spur or branch of railway about three miles in length to a coal mine. In 1899, the coal mine was abandoned. In November, 1900, the railway ceased to operate said branch line, and completely dismantled it. The evidence showed that the track and ties were taken up and removed, and that the right of way was allowed to grow up in weeds and the right of way fences not kept in repair. It was contended by the company that the evidence was insufficient to submit the question of abandonment to the jury. The court said:

"Appellant insists that the evidence in the case was insufficient to show an intention to abandon upon the part of the appellant company. It is true that nonuser for a definite fixed period is not of itself sufficient to establish an abandonment, but when 'the nonuser is accompanied by acts on the part either of the owner of the dominant or servient tenement, which manifest an intention to abandon, and which either destroys the object for which the easement was created, or the means of its enjoyment, an abandonment will take place.'"

In that case, as this, the company was permitted to introduce evidence, in effect, that its president had stated that it was not their intention to abandon the road. In holding that the expression of an intention not to abandon the road was not conclusive upon the subject, the court, quoting from City of Chicago v. C., R. I. & P. R. Co., 152 Ill. 561, 38 N. E. 768, said:

"'The rule, doubtless, is that the intent testified to, not to dedicate, will not be permitted to prevail against unequivocal acts and conduct on the part of the owner inconsistent with such intent, and upon which the public had a right to rely. * * * And where the owner swears to what his intention was, he can be contradicted by his acts and conduct or declarations.' So, here, there was before the jury testimony as to what the expressed intention of the appellant company was in regard to the abandonment, and over against this expressed intention were certain acts and conduct of the appellant company, tending to show that there was an intention to abandon the road. The declarations of the company, and its acts and conduct, were all before the jury, to be considered by them in determining the question. The expression of an intention not to abandon is not conclusive evidence upon the subject, but is to be considered in connection with the acts and conduct of the party using such expression."

In Tennessee & Coosa R. Co. v. Taylor, 102 Ala. 224, 14 South. 379, it is said:

"The visible acts and omissions relied on to show abandonment were brought out in the evidence, as also the recent acts and conduct of the defendant in returning to the construction of its highway, repairing and rehabilitating its roadbed, building thereon the superstructure of ties and rails, and completing and operating the road. 'Abandonment includes both the intention to abandon and the external act by which the intention was carried into effect,' and 'as intent is the essence of abandonment, the facts of each particular case are for the jury.' 1 Amer. & Eng. Encyc. of Law, p. 1, notes and authorities; Wyman v. Hurlburt, 12 Ohio, 81; s. c., 40 Am. Dec. 461, note 464. On the view we take of this case the only issue in it was upon this question of abandonment vel non, and the result of this issue depended upon the jury's finding as to the defendant's intent. The court by giving the affirmative charge for the plaintiff improperly took this inquiry

from the jury. The instruction was erroneous and must work a reversal of the judgment; the cause will be remanded."

See, also, Westcott v. New York, etc., R. Co., 152 Mass. 465, 25 N. E. 840.

We, therefore, hold that the question of abandonment was a question of fact to be determined by the court, sitting as a trier of both the facts and law; and, as the evidence reasonably supports the finding of the court—that plaintiff in error had abandoned its right of way—such finding will be given the same weight as the verdict of a jury, and will not be disturbed. In Sango v. Parks, 44 Okla. 223, 143 Pac. 1158, we held:

"Where a cause is tried to the court without the aid of a jury, the court's findings of fact will be given the same weight as the verdict of a jury, and will not be set aside if there is any evidence reasonably tending to support it."

See, also, Semple v. Baken, 39 Okla. 563, 135 Pac. 1141; Mullin v. Brown, 40 Okla. 137, 137 Pac. 107; Galer v. Berrian, 43 Okla. 303, 140 Pac. 155; Clinton v. Houilston, 51 Okla. 329, 151 Pac. 1035; Okla. St. Bank v. Christian, 46 Okla. 113, 148 Pac. 697.

Plaintiff in error having abandoned its right of way, the same was subject to condemnation and appropriation by the Wichita Falls & Northwestern Railway for its right of way.

In Crescent, T. P. v. Pittsburg & L. E. R. Co., 210 Pa. 334, 59 Atl. 1103, it is said:

"It cannot be said that, if a railroad has once made an appropriation of a strip of land for railroad purposes, and has afterwards abandoned it for such purposes, nevertheless, the land shall thereafter remain sacred, and forever exempt from other public uses. Clearly, after such abandonment, it is open to appropriation to other public uses."

It is contended that the court erred in awarding the damages assessed by the commissioners in favor of defendant in error Canfield, without taking into consideration the rights of the plaintiff in error with reference to the grading it had constructed on said right of way. No error is assigned in the petition in error with reference to error of the court in the amount of the assessment, and for this reason this contention will not be considered. Harrold et al. v. W. F. & N. W. R. Co., 43 Okla. 362, 143 Pac. 40.

Finding no error in the trial of this cause, the judgment is affirmed.

All the Justices concur.