### OKLAHOMA CITY–ADA–ATOKA RY. CO. v. CITY OF ADA, Oklahoma.

#### No. 4008.

United States Court of Appeals
Tenth Circuit.

May 8, 1950.

James D. Gibson, Muskogee, Okl. (Harvey J. Lambert, Ada, Okl., Chas. P. Gotwals, Muskogee, Okl., were with him on the brief), for appellant.

Mack M. Braly and Lowery H. Harrell, Ada, Okl., for appellee.

Before, HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

The City of Ada, Oklahoma, brought this action to quiet title to a strip of land now held by the Oklahoma City-Ada-Atoka Railway Company. The land in question was originally part of Indian lands, and was acquired in 1903 by condemnation proceedings under Section 13 of the Enid-Anadarko Act, Act of February 28, 1902, 32 Stat. 43, 47, granting the right "to take and condemn lands for right of way, depot grounds, terminals, and other railway purposes, in or through any lands held by any Indian tribe or nation." The trial court found that title had reverted to the City of Ada under Section 14 of the Act of Congress of April 26, 1906, 34 Stat. 137, 142, upon failure of the Railway Company to use the land "for the purpose for which it was reserved." Title was quieted in the City of Ada, and the Railway Company has appealed.

The material facts are not in dispute. The land in question is a trapezoid shaped tract of land, 30 feet wide and approximately 1162.5 feet long, one end of which commences at the west boundary line of Block 79 and extends southwesterly across Block 78 and Block 84 to the west line of Block 84, all within the corporate limits of the City of Ada, Oklahoma.

In 1908 the Railway Company laid a "wyc and tail" track approximately 380 feet long at the northeast end of the right of way, but since that year no other track has been laid, and the remaining portion has never been used for railway purposes.

The Ada Milling Company, owner of land adjacent to the right of way has, prior and subsequent to the condemnation proceedings constructed permanent mill improvements upon the portion of the right of way where the tracks were laid. In 1935 it cut off access to the right of way with a heavy industrial fence, and since that year the Railway Company has been unable to enter upon the land without permission of the Milling Company. The appellant has never objected to the use of the right of way by the Milling Company, and has offered to give it a lease for the purpose of erecting further permanent improvements.

In 1937, appellant leased 237.7 feet of the right of way, beyond the Milling Company's improvements, for a period of twenty years, with an option in the lessee to renew the lease for an additional twenty years. A brick filling station and concrete apron have been constructed upon the land for the retail sale of gasoline. The lessee's business is not incidental to railroad operations and he has neither occasion nor means for receiving or shipping commodities by rail over the right of way.

In 1904, a stone building was erected upon a portion of the right of way, between the Milling Company and the filling station, by adjacent property owners, and has since that time been occupied and used for private business purposes. Between this building and the filling station, a heavy industrial fence has been erected over and across the right of way, constituting a barrier and permanent improvement.

Appellant relies upon the rule that mere non-use of a right of way easement, without a manifest intention to relinquish the same, does not constitute abandonment for reversionary purposes. See Williams, Mayor, v. Atlantic Coast Line R. Co., 4 Cir., 17 F. 2d 17; Summers v. A. T. & S. F. Ry. Co., D. C., 2 F.2d 717; Neitzel v. Spokane, International Ry. Co., 80 Wash. 30, 141 P. 186, 187; Netherlands American Mortgage Bank v. Eastern Ry. & Lumber Co., 142 Wash. 204, 252 P. 916. Making application of this rule, it points to the undisputed fact that it has always paid state and local taxes assessed against the right of way, and listed it as part of the company's property in its annual returns filed with the Interstate Commerce Commission.

Undoubtedly, appellant never intended to abandon the right of way in the sense that it intended to relinquish title or dominion over it. But, as the parties substantially agree, the acts constituting abandonment for reversionary purposes must, in our case, be determined by a construction of the Acts of Congress granting the right of way, and expressly providing for reverter. Indeed, jurisdiction of the court rests upon the postulate that the suit arises out of these Federal Acts.

The Enid-Anadarko Act, under which the land was taken, expressly provides "That no part of the lands herein authorized to be taken shall be leased or sold by the company, and they shall not be used except in such manner and for such purposes only as shall be necessary for the construction and convenient operation of said railway" and further that "when any portion thereof shall cease to be so used such portion shall revert to the nation or tribe of Indians from which the same shall have been taken." The Act of April 26, 1906, Section 14, defines the title acquired under the original Act as an easement; reenacts the reversionary conditions and extends the right of reverter to subdivisions and municipalities under circumstances like ours.

■ This statutory test of abandonment, although controlling, is not different from the general rule applicable in reversionary cases, to the effect that when land is granted for a specified purpose, it reverts when it ceases to be used for the purpose for which it was granted. See United States v. Drumb, 10 Cir., 152 F.2d 821, 824. The difficulty arises in determining whether the land has ceased to be used for the purpose granted. In the resolution of that question the courts lean heavily upon the intent of the parties, as gleaned from their actions and conduct with relation to the dedicated property. See Denver & R. G. R. Co. v. Mills, 10 Cir., 222 F. 481; Santa Fe L. & E. R. Co. v. Laune, 67 Okl. 75, 168 P. 1022; Canadian River R. Co. v. Wichita Falls N.W. & R., 64 Okl. 62, 166 P. 163; City of Chicago v. Chicago, R. I. & P. R. Co., 152 Ill. 561, 38 N.E. 768; Gurdon & Ft. S. R. Co. v. Vaught, 97 Ark. 234, 133 S.W. 1019; Home Real Estate Co. v. Los Angeles Company, 173 Cal. 710, 126 P. 972; Amer.Jur. Easements, Vol. 17, Sections 142 and 143.

Appellant does not contend that it is using the right of way for railway purposes. Indeed, it has never attempted to use the untracked portion of the right of way for such purposes, and has ceased to use the graded and tracked portion for any purpose since 1935.

■ As the trial court found, "the unequivocal acts and conduct" of the appellant in relation to the use of the right of way are "contrary to and inconsistent with its declared intent", and it has by such acts "completely destroyed" the means of using it for the purposes for which it was reserved. These findings are amply supported by the evidence, and its conclusions must, therefore, stand.

■ The City of Ada is not estopped from asserting the reverter simply because it assessed and collected taxes against the record owner of the property. It never at any time, by any act, led the appellant to believe that payment of taxes constituted a use of the property for railroad purposes. There is no element of estoppel, and the judgment is affirmed.