## FINK, Trustee, et al. v. MIDLAND VALLEY R. CO.

No. 12778—Opinion Filed Feb. 5, 1924.

Rehearing Denied June 17, 1924.

1. **Eminent Domain — Railroad Right of Way—Abandonment—Question of Fact.**

Where a railroad company condemned land for its right of way, which is limited under the law to 100 feet, or 50 feet from the center of the track on each side, and allows an additional 100 feet where cuts and fills are necessary, and the appraisers added 25 feet additional on each side, and the evidence shows that said 25-foot strips were not needed for cuts or fills, and said railroad company in fencing its right of way only fenced 50 feet from the center of the track on each side and laid no claim to the additional 25 feet and permitted the owner of the land to cultivate and use it for twelve years, such acts on the part of defendant railroad raise the question of abandonment under all the facts and circumstances of the case, and it was error for the court to direct a verdict for the defendant railroad.

2. **Same.**

To constitute abandonment of an easement of right of way, there must be not only an actual relinquishment, but an intention to abandon; and this is a question of fact for the jury, or the court sitting as a trier of the facts, under all the evidence.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

This is an action in ejectment brought by plaintiffs in error, who were plaintiffs below, against the defendant in error, who was defendant below, and will hereinafter be referred to as plaintiffs and defendant. The suit involves the title to strips of land 25 feet wide on each side of the defendant railroad. This land was a part of the allotment of Eliza McGuire, a Creek Indian. In 1904, the Midland Valley Railroad commenced condemnation proceedings under what is known as the Enid and Anadarko

Act to condemn a right of way across this and other lands, and on September 5, 1904, the United States Court for the Indian Territory, sitting at Muskogee, entered an order of condemnation of the land in controversy in this suit. The commissioners that were appointed to appraise the land sought to be condemned in their report to the court showed that they condemned 100 feet, or 50 feet on each side of the center of the tracks, which was the extent of the right of way allowed by said act except where there were heavy cuts or fills to be made and then they were permitted to condemn as much as 50 feet additional on each side: but in this case the appraisers state that they condemned 25 feet additional on each side, making a right of way 150 feet wide instead of 100, while the report of the referee or the appraisers shows that this additional 25 feet on each side of the track was condemned on account of "heavy work." It is conceded that the land through this particular tract was level, and there were no cuts or fills made; that the road did not need it for that purpose at the time it was condemned nor do they need it for that purpose at the present time. Since the roadbed was constructed and the tracks laid, the defendant railroad built a fence so as to enclose its right of way, and through this particular land they built a fence 50 feet on each side from the center between the tracks, and did not fence the additional 25 feet, and never fenced it until about the 1st of February, 1917, when they set their fence out over the protest of the then owner of the land. The land through which this railroad runs to this place was a part of the allotment of Eliza McGuire. After the condemnation proceedings, and after the railroad company had fenced this tract, 50 feet on each side, Eliza McGuire sold said land to J. F. Paulter, and Paulter afterwards sold it to E. C. Bothwell, and Bothwell sold to the plaintiffs herein. Paulter and his successor in title testified that they cultivated this 25-foot strip on each side of said right of way every year from 1904 up to 1917; that they cultivated right up to the fence, and no objection was made to them doing so. The railroad company, on or about February 1, 1917, set their fence out so as to take in this 25 feet on each side of the track, over the protest of the plaintiffs; and on June 4. 1917, this suit was instituted by the plaintiffs to recover possession of the additional strip of 25 feet on each side of the track. The defendant set up the condemnation proceedings, and claimed the right to said strips of land under said condemnation proceedings.

The plaintiffs countered by alleging that said defendant railroad never took possession of said 25 feet at the time it was building its road and never used any part of said 25 feet in the construction of the road; that there was no grade or fill on this particular piece of land, and the purpose for which it was condemned was wrongfully stated in the report of the referee; and that said defendant railroad company never exercised any ownership, or attempted to reduce said 25 feet on each side to possession until about the first of February, 1917, when it forcibly entered on said strips and extended its fence around same, and set up that such acts on the part of the railway company constituted an abandonment of said 25-foot strips. The plaintiffs introduced J. F. Paulter as a witness, who testified that he bought this land from Eliza McGuire on the 10th day of February, 1908; that the same was in cultivation at the time he bought it, and that he continued to cultivate it right up to the fence during the time he owned the same, and on the 23rd day of February, 1911, he conveyed the same to E. C. Boswell, and that on the 1st day of June, 1911, said E. C. Boswell conveyed the same to A. Y. Barnes, one of the plaintiffs herein. The evidence shows that Barnes, or Fink, as trustee for Barnes, continued to cultivate this land up to the 1st day of February, 1917, when the defendant railway over their protest extended their fences out and took in these two strips of land, Paulter testified that he was familiar with the land from the time the railroad was built up to the time of the commencement of this suit, and that said 25-foot strips were not fenced by the railroad company but were used by the owner of the land and cultivated right up to the fence until February, 1917, when said railway company fenced the same.

H. H. Bell was introduced as a witness on the part of the plaintiffs, and testified that he was familiar with this land at the time said railway was built through there, and that said railway did not fence the additional 25 feet on each side, but only fenced 50 feet on each side, and that the 25-foot strips on each side were cultivated by Eliza McGuire and her successors up to the 1st of February, 1917, and that during that time said railroad company made no claim to these 25-foot strips, nor asserted any claim of ownership to them. The defendant called as a witness L. D. Martin, court clerk of Muskogee county, and had him identify the papers in connection with the condemnation proceeding, and they were introduced in evidence.

The defendant then introduced in evidence Mr. Kaighan, the chief engineer of the road, who testified that he was in charge of the construction work on said road at the time the right of way was acquired through this land and had been the chief engineer ever since. He testified that the land at this particular point was level and that in constructing a road bed it was not necessary to make any cuts or fills, and that the additional 25 feet on each side was not necessary at that time, or needed for the purpose for which it was condemned, and had not been needed since, but that it might become needed in the future, if the town of Bixby grew to such an extent that it would be necessary to lay tracks or cutouts on this 25 feet. This is a resume of the facts necessary for determinaton of the questions involved in this case. At the close of the testimony, the trial court directed a verdict for the defendant. Plaintiffs took the necessary steps to appeal the case, and the case is now before this court for final determination.

N. A. Gibson, J. L. Hull, and T. L. Gibson, for plaintiffs in error.

O. E. Swan, Reeves & Russell, and Blakeney & Ambrister, for defendant in error.

Opinion by MAXEY, C. As will be seen by the foregoing statement this case involves the title to 25 feet on each side of the right of way through the premises of the plaintiffs; that the defendant in February, 1917, went upon this land and enclosed 25 feet adjoining the right of way on each side with a fence taking it in with their right of way. The defendant answers and sets up that it is entitled to this land under certain condemnation proceedings had in the United States Court for the Indian Territory in September, 1904. It appears from the report of the commissioner who assessed the damages for the right of way across this piece of land in question that in making their report they incorporated the following language in the report:

"A right of way 100 feet in width across the east one-half of the northwest quarter of section 24, township 17 north, range 13 east, also the following additional right of way which is needed on account of the heavy character of the work."

This additional land taken, or attempted to be taken, is between stations 815 and 900, and is the land involved in this litigation. The plaintiffs contended that the railroad company, defendant, had never used these two 25-foot strips of land; that the land through which said railroad pass-

ed belonging to plaintiffs was perfectly level prairie land; that there were no cuts or fills made in the construction of said railroad company's roadbed; no part of this 25 feet on each side was used at the time of the construction, and had never been used since for railroad purposes; that in 1905, after the roadbed was made and the tracks laid, the defendant railroad company fenced the right of way and set their fence 50 feet from the center of the track on each side of its railroad, and did not fence the 25-foot strips of land on each side of the right of way up to February, 1917, when the said defendant railroad company entered upon said land over the protest and objection of the plaintiffs and set their right of way fences out on each side of their right of way so as to cover and take in 25 feet additional on each side. In May, 1917, plaintiffs instituted this suit in ejectment to recover possession of these 25-foot strips. At the trial the defendant put Mr. Kaighan, the chief engineer of the defendant railroad, and who was the engineer in charge of the construction, on the stand as a witness in its behalf. He testified that this additional 25-foot strip was not needed at the time it was condemned, for the purposes for which it was condemned, and had not been needed since, and was not needed now, but said that conditions might arise when it would be needed in the future for additonal trackage or siding. The plaintiffs introduced testimony to show that the plaintiffs and their predecessors in title had cultivated this 25 feet on each side in connection with their other land every year since it was condemned up to February, 1917, when the defendant over their protest extended the fence out and took in these 25-foot strips.

The question, therefore, arises as to whether the condemning of this land for a purpose for which it was not needed by the railroad company, and never has been needed for that purpose, and the fact that they left it unfenced, permitted the plaintiff to use it, and never made any claim to it for about 12 years constitutes an abandonment. Counsel for defendant in error has cited a large number of cases from other jurisdictions on the question of abandonment. Counsel for plaintiffs in error have cited two cases from this court. Canadian R. Co. v. Wichita Falls & N. W. R. Co. et al., 64 Okla. 62, 156 Pac. 163, and Santa Fe. L. & E. R. Co. v. Laune et al., 67 Okla. 75, 168 Pac. 1022. In both of these cases, this court held that the railroad company had condemned the right of way, and while the facts in those two cases are somewhat dif-

ferent from the facts in this case, the principles of law announced still stand the law of this jurisdiction.

In this case, at the close of the testimony, the trial court sustained a motion for a peremptory instruction and directed the jury to return a verdict for the defendant railroad company. This action of the court is assigned as error. In the case of Canadian R. R. Co. v. Wichita Falls & N. W. R. Co., supra, the first paragraph of the syllabus of the opinion is as follows:

"To constitute abandonment of an easement of right of way, there must be not only an actual relinquishment, but an intention to abandon; and this is a question of fact for the jury, or the court sitting as a trier of the facts, under all the evidence."

It seems to us from the facts in the case, under the rule laid down by this court in the Canadian R. Co. Case, just cited, that it was error for the court to have directed a verdict for the defendant. The evidence of plaintiffs showed that they and their predecessors in title had cultivated these two strips of land, together with their other land, up to February, 1917; no claims were made to these strips of land during that time, and taking into consideration that these strips were left outside the fence of the right of way and remained outside and in the fields of plaintiffs for 12 years, and the testimony of defendant's engineer that they were not needed for the purposes for which they were condemned at the time they were condemned, and had not been needed for that purpose up to the time of trial, was sufficient evidence on the question of abandonment to have sent the case to the jury. Another question in the case is, that this land was condemned under what is known as the Enid & Anadarko federal statute, and that under the terms of that statute 100 feet wide was all that the defendant railroad company was entitled or authorized to take, except where there are heavy cuts or fills to be made, then it has authority to take as much as 100 feet on each side of the right of way, and for station grounds, side tracks, depots, etc. they were authorized to take not exceeding 200 feet in width by a length of 2000 feet. Now it is conceded and proven that these 25-foot additional strips were not needed for the purposes for which they were condemned. The question arises whether they were legally condemned. In other words, can they by condemnation acquire title to these two strips of land for a purpose for which they were not needed, and never will be needed for that purpose? Can they, because they were included in

condemnation proceedings, now say that they do not need them for the purpose for which they were condemned, but that they might in the future need them for other purposes?

The defendant insists that plaintiffs must recover on the strength of their own title. This is a familiar rule of law in ejectment suits and when plaintiffs showed title from the Creek Nation as they did in this case, if the case had stopped there no one would contend but what the plaintiffs would have been entitled to a verdict, but the defendant had answered and pleaded the condemnation proceedings and set that up as a defense to plaintiffs' title. Counsel for defendant also insists that plaintiff is bound by the terms of its deed which conveyed this piece of land to plaintiffs, subject to the right of way of Midland Valley R. Company across the northeast corner of said tract. This deed does not attempt to convey the right of way of the Midland Valley R. Company, but the question in the case is what was the right of way of the Midland Valley R. Company? Was it the 50 feet on each side of the track that they fenced as the right of way and made no claim to the additional 25 feet on each side for 12 years, and now say they did not need it when it was condemned, have not needed it since, and they do no know that they will ever need it. These facts in our judgment tend strongly to prove abandonment, but as this court has held in the Canadian R. Co. Case that is is a question for the jury and as we must reverse the case for the error complained of in directing a verdict in favor of the defendant in error, it will not be necessary to pass on the question of abandonment.

For the foregoing reasons, the judgment of the trial court is reversed and the case remanded, with directions to set aside the judgment rendered and grant plaintiffs a new trial.

By the Court: It is so ordered.