BROGDEN et ux. v. BILLINGTON et ux.

No. 32232.   June 11, 1946.

Rehearing Denied Sept. 10, 1946.

*172 P. 2d 332.*

Chas. Skalnik and F. V. Westhafer, both of Tulsa, for plaintiffs in error.

Frank Hickman, of Tulsa, for defendants in error.

CORN, J.   This is an appeal from a judgment of the district court of Tulsa county, in an action by J. Jeff Billington and Cecile N. Billington, husband and wife, plaintiffs, to quiet title to an easement and to enjoin J. C. Brogden and Mary Jane Brogden, husband and wife, defendants, from interfering with plaintiffs' use thereof.

Plaintiffs owned the N.E. ¼ of N.W. ¼ and S.½ of N.W.¼ of section 29, twp. 19 N., R. 12 E., in Tulsa county, said land being bounded on the north by a paved road.   In October, 1939, plaintiffs conveyed the northeast 40 acres (N.E. ¼ N.W. ¼) to the Gilliams, husband and wife, in the deed "reserving an easement to grantors for road purposes a strip forty feet wide running along the entire west line of the above land." This deed was duly recorded.

March 10, 1941, plaintiffs sold and conveyed to defendants Brogden the southeast 40 acres (S.E.¼ of N.W. ¼), the deed providing "less a strip of the land forty feet in width along the west boundary line of said land, which is reserved for roadway purposes."   This deed was duly recorded.   The Gilliam easement above referred to provides defendants only means of ingress and egress to the paved road on the north.

Prior to beginning construction of improvements plaintiffs and defendants caused a survey to be made.   The lands were divided on the west by an iron and wire fence which plaintiff had pointed out as the division line.   The survey disclosed that the fence pointed out as the west boundary was not the true line, but meandered back to the west upon plaintiffs' land some 25 feet.

Plaintiffs alleged ownership of the easement for roadway purposes, giving them a means of ingress and egress to the paved road on the north; that defendants denied plaintiffs' right or interest in such 40 foot strip so reserved along defendants' west boundary, and that defendants were threatening to shut off plaintiffs' use of such roadway by erecting a gate at the north end of defendants' land and by the planting of trees within the roadway strip.   The petition asked injunction to restrain defendants from interfering with plaintiffs' free use of the roadway, that title to said easement be quieted in plaintiffs, and that defendants be enjoined from erecting barriers or planting trees to interfere with plaintiffs' use of the roadway.

Defendants filed answer admitting reservation of the easement, but denied plaintiffs were entitled to the use on grounds that by plaintiffs' own acts and conduct the easement had been terminated, said acts being incompatible and inconsistent with plaintiffs' exercise of the privilege.

By cross-petition defendants alleged the easement reserved in the deed was not a way of necessity; that plaintiffs had a private means of travel over

their own premises in another direction; defendants had conformed their improvements to the use contemplated by the reservation; had made their improvements in reliance upon plaintiffs' assurance that the original boundary fence was the true line and would not be realigned, and to realign fence at this time would in many ways destroy improvements defendants had made, and for such reason defendants notified plaintiffs they could not permit the boundary fence to be realigned except upon conditions satisfactory to themselves.

Further, that plaintiffs had extinguished the easement by claiming to be the owner of the roadway strip and paying one year's taxes thereon; and that plaintiff Dr. Billington had continuously pursued a course of personal conduct toward defendant making continuance of the easement inconsistent and incompatible with plaintiffs' claim thereto.

Defendants then asked court to adjudge said easement to have been extinguished, enjoin plaintiffs from any interference with defendants, coming upon defendants' land, enjoin plaintiffs' use of the Gilliam easement, and for other relief.

The trial court heard the evidence and requested both parties to submit written findings of fact and conclusions of law. Thereafter the trial court made written findings of fact and conclusions of law that: plaintiffs had retained the easement; Gilliam easement was for use of both parties and did not pass to defendants by conveyance; plaintiffs had never lost their easement and same had not been destroyed by nonuser; plaintiffs entitled to unrestricted use of their property up to true boundary; defendants not entitled to any injunctive relief and plaintiffs not estopped to assert ownership of property up to true boundary. Judgment was rendered for plaintiffs, and defendants have appealed.

Ten separate assignments of error are presented under five propositions in seeking reversal of the judgment rendered.

The first contention urges error in the trial court's refusal to strike the testimony of plaintiff (or Billington), and in overruling defendants' demurrer to the evidence. This is predicated upon the proposition that the petition alleged plaintiffs' joint ownership, while the evidence showed that plaintiff had conveyed the land to his wife (co-plaintiff) by warranty deed, without mentioning the easement. Hence, defendants contend Billington could not testify for her and, as she offered no evidence, the defendants' demurrer to the evidence should have been sustained.

Defendants urge that plaintiff could not testify because under 12 O.S. 1941 § 221 every action must be prosecuted by the real party in interest. Further, inasmuch as the evidence showed plaintiff had conveyed to his wife, that under 12 O.S. 1941 § 385, providing that certain persons are incompetent to testify, that plaintiff was incompetent to testify in behalf of his wife and his testimony should have been stricken.

12 O.S. 1941 § 385 provides:

"The following persons shall be incompetent to testify: . . .

"3. Husband and wife, for or against each other, except concerning transactions in which one acted as the agent of the other, or when they are joint parties and have a joint interest in the action; but in no case shall either be permitted to testify concerning any communication made by one to the other during marriage, whether called while that relation subsisted, or afterwards. . . ."

Defendants stipulated that their deed from plaintiffs reserved the easement. In construing section 385, subdivision 3, above, we have held that where one spouse has a joint interest in the action, that spouse's testimony is competent. Stewart v. Riddle, 76 Okla. 70, 184 P. 443; Turner v. Nicholson, 143 Okla. 45, 287 P. 396; Green v. Blan-

cett et al., 179 Okla. 483, 66 P. 2d 911.

Plaintiffs conveyed to defendants by warranty deed. Plaintiff conveyed to his wife, but they occupied the land as their home. Defendants stipulated that plaintiffs had reserved the easement. These facts are sufficient to establish a joint interest in the action. Having such interest, Dr. Billington was competent and his testimony properly admitted. See Cressler v. Brown, 79 Okla. 170, 192 P. 417, to the effect that a warrantor has a sufficient interest upon which to base an action in his own name to quiet his grantee's title.

Defendants next contend the easement was extinguished by the acts of plaintiffs, incompatible and inconsistent with the nature and exercise of the servitude. This argument is based upon acts mentioned in defendants' requested findings that: defendants relied upon plaintiffs' assurance the fence would be considered as the true boundary; relying upon this assurance, defendants improved their property with plaintiffs' knowledge and consent; portion of plaintiffs' easement has never been used by plaintiffs, but was used by defendants to accommodate their general building plan with plaintiffs' knowledge; all defendants' construction was with plaintiffs' knowledge and was inconsistent with plaintiffs' easement; plaintiffs had claimed fee title to the easement, and had conveyed land to wife without conveying easement; plaintiffs' personal conduct disturbed defendants' peace and safety and was incompatible with the easement.

Supporting this, defendants cite 60 O.S. 1941 § 59, sub. 3, and certain texts (19 C.J. § 167 and 9 R.C.L. § 69) to the effect that performance of any act upon either tenement by owner of the servitude, or with his consent, incompatible with the nature or exercise of the easement, serves to extinguish the easement.

Conceding the above to be correct in principle, it becomes a question of fact whether plaintiffs' acts were so incompatible or inconsistent with the nature and exercise of the easement that it was extinguished. To show abandonment by plaintiffs the acts relied upon must be of a conclusive character.

The trial court found, and the evidence supports the finding, that plaintiffs' acts as proved in the evidence in no way tend to destroy, and were not inconsistent with, the easement. Likewise the court found that the nonuser urged by defendants had not destroyed the easement, not being for the prescriptive period, since it is generally recognized that nonuser for less than the prescriptive period raises no presumption of abandonment, unless there are acts manifesting a clear intent to abandon such easement. Pitcairn v. Harkness, 10 Cal. App. 295, 101 P. 809; Fruit Grower's Ditch & Reservoir Co. v. Donald, 96 Colo. 264, 41 P. 2d 516, 98 A.L.R. 1288.

When defendants attempted to erect a gate across the roadway strip plaintiff tore down the posts, and insisted the way remain open. All plaintiffs' acts obviously were directed at seeing that defendants did not obstruct the roadway. The evidence sustains the trial court's findings that the easement had not been extinguished by incompatible and inconsistent acts committed by plaintiffs.

The further proposition is asserted that the easement has been extinguished because plaintiffs are equitably estopped from the use thereof, having by consent and invitation permitted defendants to construct improvements thereon incompatible and inconsistent with plaintiffs' rights in such easement.

This is based upon the argument that all improvements were made upon plaintiffs' assurance the fence was to be considered the true boundary, and relying upon such assurance they expended money and constructed improvements with plaintiffs' knowledge and consent; that these acts were incompatible with the easement and

plaintiffs thus were equitably estopped from use of the easement, and from denying that the line fence constituted the true boundary.

Supporting this, defendants cite 60 O.S. 1941 § 59 (subd. 3) which provides that a servitude may be extinguished "by the performance of any act upon either tenement, by the owner of the servitude, or with his assent which is incompatible with its nature or exercise; . . ." Also relied upon is the rule, as announced by 17 Am. Jur. § 143, to the effect that where a dominant owner leads the servient to treat an estate as being free of the servitude, he cannot resume the easement where such resumption results in injustice to those who have acted upon his apparent abandonment.

It must be noted that defendants, although they planted trees and landscaped the premises, constructed no permanent structures, other than the bridge, which was as essential to defendants' use of the premises as plaintiffs'. It is not shown that the trees totally obstructed the roadway, but defendants assert that the entire plan of their estate will be destroyed if plaintiffs prevail.

The record does not support defendants' contention of equitable estoppel. Plaintiffs' petition alleged trees were being planted in the roadway, and asked an injunction against defendants to bring such activities to an end. While defendants had constructed buildings on their premises very close to the true boundary line, we cannot say that plaintiffs are estopped from asserting the true boundary because defendants were at one time told the plaintiffs did not care to move this fence.

The evidence, contrary to establishing plaintiffs' acquiescence, shows that plaintiffs refused to permit defendants to project their plan onto the easement. The mere fact defendants saw fit to plan their estate close to the true boundary line and now feel the worth of their improvements may be destroyed is not sufficient to establish the equitable estoppel claimed by defendants.

Defendants further contend the line fence should be held to be the true boundary, and that the trial court erred in not enjoining plaintiffs from realigning this fence.

The evidence showed both plaintiffs and defendants knew the line fence was not the boundary, but that it ran back west onto plaintiffs some 22 feet. This was established by a survey paid for jointly by the parties, and known and understood by defendants before they began improving their premises.

It is defendants' theory that where parties agree upon a boundary line, and one party acts upon such agreement and builds with the other's knowledge and consent, that party cannot later repudiate the agreement and claim that a different line exists, irrespective of what his legal rights might have been. See Patterson v. Meyer, 28 Okla. 304, 114 P. 256. Midland Valley Ry. Co. v. Imler, 130 Okla. 79, 262 P. 1067.

However, the record herein takes this matter outside the rule contended for by defendants. They knew the fence was not the true boundary; there was no dispute concerning such boundary. Admitting plaintiff at one time told defendants he did not intend to move the fence to the true, surveyed boundary, this did not have the effect of establishing a new boundary line. The correct boundary was never in dispute. Plaintiff's statement that he did not care to realign the fence, even coupled with his failure to do so for three years, is not sufficient to provide the basis for laying down the rule contended for by defendants; that in such circumstances the true boundary is to be disregarded, and defendants held to have established a new boundary by virtue of the improvement plan followed on their own premises.

The final contention is that the judgment is erroneous upon the legal principles involved, and further violates the principles of equity in that it fails to do justice and administer relief.

We are committed to the rule that in causes of equitable cognizance the trial court's findings will not be disturbed on appeal unless the judgment is against the clear weight of the evidence. Dungey v. Dowdy, 195 Okla. 361, 159 P. 2d 231; Parks v. Clark, 194 Okla. 148, 148 P. 2d 169; McCrory v. Evans, 192 Okla. 649, 138 P. 2d 823.

In such cases the trial court's findings are accorded great consideration, and the judgment will not be disturbed unless against the clear weight of the evidence. The evidence in the record before us amply sustains the trial court's judgment.

Judgment affirmed.

HURST, V.C.J., and RILEY, OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur.