## KANSAS, OKLAHOMA & GULF RY. CO. v. ROGERS.

No. 32683. Sept. 16, 1947.

Rehearing Denied March 30, 1948.

*191 P. 2d 209.*

Charles P. Gotwals and James D. Gibson, both of Muskogee, and Warren & Warren, of Holdenville, for plaintiff in error.

Charles L. Orr, of Oklahoma City, and A. M. Woodford, of Holdenville, for defendant in error.

HURST, C.J. This is an action commenced on August 17, 1938, by W. G. Rogers to quiet title to a tract of land consisting of 27.75 acres on which the defendant railroad company had an easement for water reservoir and water station purposes. From the judgment in favor of plaintiff, quieting title in plaintiff to the land in controversy, except the regular right of way of the railroad, this appeal was taken.

The M., O. & G. Railroad Company, predecessor in title to the defendant railroad company, acquired an easement on some five acres of the tract in 1907 and built thereon a reservoir known as the Coal Creek Reservoir. In 1914 it acquired the rest of the tract and enlarged the reservoir. The defendant company succeeded to the right of the M., O. & G. Railroad Company about 1919. In 1907 a dam and a wooden water tank were erected on the property, and from that time until 1930 or 1931 the company took water from this water station for its steam engines. In 1927 the company began using water cars to service its steam engines and in 1930 or 1931 it discontinued the use of this tank and reservoir. Within a year or two thereafter, the water tank and pump house were dismantled and removed, with the knowledge and consent of the company's section foreman, and since that time the company has taken no water from said reservoir. About February, 1937, the dam broke and has never been rebuilt. The reservoir has grown up in willows, cottonwood trees, and other vegetation. The reservoir was never fenced off from the surrounding land, which belongs to plaintiff, and plaintiff has been using it for grazing purposes since the dam broke. It is agreed that the railroad acquired no greater rights than it would have acquired under the power of eminent domain.

After the company acquired the easement on the 27.75 acres, the plaintiff acquired title to the land surrounding the 27.75 acres including the servient estate in the 27.75 acres. He had constructive, if not actual, notice of the rights of the company at the time he purchased his land. The easement for

regular right-of-way purposes is not involved in this case.

The company does not claim that any effort to maintain the reservoir and water station has been made since 1931, when the use of water was discontinued, but introduced evidence to the effect that it is cheaper to rebuild such an installation than to maintain it when not used. The general superintendent testified that the company does not have any immediate need for the use of water from the reservoir, but he would not say that it would never have any use for the water. There was evidence on behalf of the company that certain concrete foundations remained, upon which the water tank and pump house could be rebuilt. Plaintiff testified that in his opinion these foundations were not in satisfactory condition upon which to rebuild.

Defendant's witness, R. H. Lomax, tax agent for the defendant, testified that the valuation record filed with the Interstate Commerce Commission in 1919 includes the land in controversy and that this land has not been eliminated from the record as required when land is abandoned or released. This witness further testified that the land in controversy was included in the return made in 1932 to the Oklahoma Tax Commission, which report is the basis for payment of taxes on such lands; that upon any change in ownership in the land reported such change must be reported; and that no change has been reported. Plaintiff, on the other hand, testified he paid taxes on all the land for some years previous to the trial.

Under the stipulation that the rights of the railroad acquired were only such "as could be obtained under condemnation proceedings," the railroad acquired in these lands only an easement which ceases upon abandonment. Section 24, art. 2, Oklahoma Constitution; Marland v. Gillespie, 168 Okla. 376, 33 P. 2d 207. Therefore, the single question presented is: Has this right of way been abandoned by the railroad?

We have considered the question of the abandonment of an easement of right of way previously and have announced certain principles of law applicable here. To constitute abandonment of an easement for right-of-way purposes, there must not only be an actual relinquishment, but an intention to abandon, and this is a question of fact to be determined under all the evidence. Canadian River R. Co. v. Wichita Falls & N.W. R. Co., 64 Okla. 62, 166 P. 163; Santa Fe, L. & E. R. Co. v. Wichita Falls & N. W. R. Co., 64 Okla. 88, 166 P. 168; Fink v. Midland Valley R. Co., 100 Okla. 23, 227 P. 146. In C., & E. I. R. Co. v. Clapp, 201 Ill. 418, 66 N.E. 223, quoted in Canadian River R. Co. v. Wichita Falls & N.W. R. Co., supra, the court said:

"Appellant insists that the evidence in the case was insufficient to show an intention to abandon upon the part of the appellant company. It is true that nonuser for a definite fixed period is not of itself sufficient to establish an abandonment, but when the nonuser is accompanied by acts on the part either of the owner of the dominant or servient tenement, which manifest an intention to abandon, and which either destroys the object for which the easement was created, or the means of its enjoyment, an abandonment will take place'."

1. The defendant urges that the fact that this land was included in the 1932 report to the Oklahoma Tax Commission and that taxes were paid every year since, based upon this report, in conclusive that it had no intention of abandoning this easement. It cites People v. Southern Pac. Co. et al., 172 Cal. 692, 158 P. 177. We cannot agree with this contention. The cited California case involved a right of way over public lands granted by the state, and the lands there under consideration were described in annual statements for taxation, as part of their right of way under the provisions of the Political Code of that state. Here the evidence concerning the report for taxes is not conclusive as to the intention to retain the easement for the water reservoir and station.

The report itself is not in the record. Only the testimony of Mr. Lomas, the tax agent for the company, is before us in this connection. He referred to a report or statement required by section 12400, O.S. 1931, which by Session Laws of 1931, ch. 66, p. 220, was required to be made to the Oklahoma Tax Commission. It is plain that under section 12400 the company was required to schedule all of its right of way, track and roadbed, and list its water stations and machinery and tanks in connection therewith in detail as to location. We consider this report of special importance in connection with the intention of the company to abandon since it was made and filed after the company had discontinued the use of water from the reservoir in 1930 or 1931.

The testimony of Mr. Lomax as to the report when compared with the map of Coal Creek Reservoir showing the boundaries and areas of the reservoir and the regular right of way for track and roadbed purposes and also with the judgment of the trial court, justifies the conclusion that the right of way for reservoir and water station purposes was not reported at all in 1932 and only the regular right of way for track and roadbed purposes was scheduled in the statement made at that time.

Three things are apparent from such a comparison: (1) the acreage reported by the company in 1932 (28.88 acres) is only one-half, approximately, of the total acreage of both the regular right of way and the right of way for water purposes within the two sections; (2) the acreage held to be regular right of way by the trial court is almost identical in amount and location with the three tracts identified in the testimony of Mr. Lomax; and (3) the testimony as to the report does not show that any right-of-way claim was scheduled at all in one quarter section, which, according to the judgment of the trial court and the map, contains approximately one-half of the acreage of the water reservoir.

The contention of the defendant that changes in runs or the addition of certain runs, or the requirement because of increased tonnage that water cars be discontinued, does not seem to be strong evidence of the lack of intention to abandon in the face of the necessity for rebuilding the water station, tank and pump facilities, the rebuilding of the dam and awaiting for sufficient water to be impounded for use, together with the consideration of the evidence concerning the general use of water cars by the company now.

All the facts and circumstances were put before the court as the trier of facts. The trial judge viewed the premises. We cannot say that the judgment that the defendant has abandoned the easement for water reservoir and water station purposes is clearly against the weight of the evidence.

2. The company complains of the refusal of the trial court to permit its superintendent to testify that it had no intention of abandoning the property. No exception was taken by the company to the ruling of the court. Furthermore, in the trial of a case wherein the issue is abandonment, which the company denies, where as here the defense of the company is its lack of intention to abandon, we do not think it is prejudicial to refuse a statement of a witness that the company had no intention to abandon, since it adds nothing to the stated position of the company, and is in itself not conclusive of what the intention was, but can be contradicted by all the facts and circumstances which were before the court. The error, if any, was harmless. Springfield Fire & Marine Ins. Co. v. Simmons, 184 Okla. 323, 87 P. 2d 941; Pierce v. C.I.T. Corp., 170 Okla. 633, 41 P. 2d 481.

Affirmed.

DAVISON, V.C.J., and RILEY, CORN, and LUTTRELL, JJ., concur. BAYLESS, WELCH, and GIBSON, JJ., dissent.

GIBSON, J. (dissenting). I think that paragraph 1 of the syllabus is a correct

statement of the law, but it has been misapplied here. Syllabus 1 is as follows:

"To constitute abandonment of an easement there must not only be an actual relinquishment, but an intention to abandon, and this is a question of fact to be determined under all of the evidence."

In 1907 defendant's predecessor in title acquired a part of the land in question and erected thereon its Coal Creek Reservoir. The remainder of the land in question was acquired in 1914 and the reservoir was enlarged.

Thereafter plaintiff acquired his interest in the property.

Plaintiff's evidence was summarized in his brief as follows:

Plaintiff, W. G. Rogers, testified that he was the owner and in possession of the property by purchase; that his warranty deeds contained no reference or exception regarding the railroad right of way; that he knew of the regular right of way across the land and discovered that the defendant claimed other portions of the land for water right purposes. He made inquiry and discovered guardianship proceedings in the office of the court clerk wherein and whereby the M., O. & G. Railway Company acquired water easements on portions of the land.

Plaintiff, Rogers, testified that the dam went out about 1930 and about that time the pump house facilities and water tanks were removed from the premises and that they had never been reconstructed in whole or in part; that there had been no water impounded since the dam went out; that the old lake bed had grown up in weeds, brush and trees, some of them 30 or 40 feet high. He further testified that he had the land in controversy fenced and used it as a pasture; that he had paid the ad valorem taxes for 1942 and prior years.

Plaintiff's witness, F. T. Dresser, testified that he, Alf Sanders, and Henry Collins tore down and removed the water tank and pump house in 1931 and 1932.

Plaintiff's witness, A. T. Sanders, testified that he helped take the tank down and remove it from the right of way; that the dismantling was authorized by Mr. Luper, section foreman; that the pump station was dismantled and removed sometime in the month of January, 1931; that the dam was holding water at that time; that he didn't know when the dam went out but that he had heard several different things about it in February, 1937; that in February, 1937, the lake bed had already grown up in willows and cottonwood trees, some of them 30 or 40 feet high. He testified that the railroad took no water from the station after the removal of the tank and pump house and had made no effort to replace the dam or rebuild the pump station and pump house. He further testified that he was in actual possession of the lake bed under the lease from the plaintiff; that it was under fence and that he was using it as grazing land.

Defendant's evidence disclosed that the property had at all times been reported to the Interstate Commerce Commission as its property, and that the property had been returned by it to the Oklahoma Tax Commission for taxation and the taxes had been paid to Hughes county. There was detailed testimony as to the necessity of a railroad to have a water supply not only for present needs of operation of its trains but also to have such facilities in reserve. Also that the discontinuance of taking the Coal Creek water was not a permanent change and that it had never been the defendant's intention to abandon the Coal Creek Reservoir permanently as a source of water supply for the operation of its trains.

The burden was on the plaintiff to establish by conclusive proof defendant's intention to abandon the reservoir. In Brogden et ux. v. Billington et ux., 197 Okla. 411, 172 P. 2d 332, we said:

"To constitute abandonment of an easement the acts relied upon must be of a conclusive nature; mere inconsistent acts are not sufficient."

The general rule is stated in 28 C. J. S. §748, as follows:

"Where an abandonment or extinguishment is relied on, the facts giving rise to such abandonment or extinguishment must be established by clear and unequivocal evidence; and it has been said that in such case more evidence is required than to establish the title to land by adverse possession."

Defendant's general superintendent testified that the water conditions of the defendant had recently been considered, and that the Coal Creek Reservoir was the only available water station in the event the one at Tupelo had to be closed. And that in the operation of the railroad he had relied on the existence of such a reserve at Coal Creek.

In St. Louis-San Francisco Ry. Co. v. McBride, 104 Okla. 216, 231 P. 284, we said:

"Neither courts nor juries nor the general public may be permitted to conjecture that a portion of such right of way is no longer needed for the use of the railroad and title to it has vested in whomsoever chooses to occupy the same. The whole of the granted right of way must be presumed to be necessary for the purposes of the railroad as against a claim by an individual of an exclusive right of possession for private purposes."

In 51 C. J. 510, the general rule is stated as follows:

"In the absence of statute otherwise it is ordinarily a question for the railroad company, when acting in good faith, to decide what lands are reasonably necessary for the purposes of its road."

Plaintiff introduced no proof of abandonment except the removal of the structures in 1931 and the breaking of the dam in the year before the suit was filed.

" . . . the necessity of immediate use is not essential to preserve the right of the railroad." Midland Valley R. Co. v. Jarvis, 29 Fed. 2d 539, 540.

See, also, Midland Valley R. Co. v. Sutter, 28 Fed. 2d 163.

In Dow et al. v. Worley, 126 Okla. 175, 256 P. 56, we held:

"To constitute abandonment in respect of property, there must be a concurrence of the intention to abandon, and an actual relinquishment of the property, so that it may be appropriated by the next comer. In determining whether one has abandoned his property rights, the intention is the first and paramount object of inquiry, for there can be no abandonment without the intention to abandon."

Plaintiff's evidence only shows nonuse and the removal of structures which, according to the proof, it was easier and less expensive to remove and rebuild than to maintain. The record discloses no acts "of a conclusive nature" of abandonment.

For these reasons, I think the judgment of the trial court should be reversed.

Mr. Justice BAYLESS and Mr. Justice WELCH concur in these views.